UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.,<br><br>501 Front Street<br>Norfolk, VA 23510,<br><br>    Plaintiff,<br><br>    v.<br><br>THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201,<br><br>    Defendant. | Civ. No.<br><br><br><br>**Complaint for Declaratory and Injunctive Relief** |

1. This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, challenging the Centers for Disease Control and Prevention's (CDC) unlawful withholding of records related to elephants and tuberculosis (TB), a potentially deadly disease that is highly transmissible between elephants as well as between elephants and humans. As the CDC has recognized, TB carried by an elephant was recently linked to an outbreak among eight people in Tennessee, some of whom had no direct contact with the elephant. The CDC has stressed that there is a significant need to develop practices and programs to reduce the incidence of such transmission. People for the Ethical Treatment of Animals, Inc. (PETA) is seeking records that would illuminate the public's understanding of the CDC's awareness and actions pertaining to this nationwide issue that could reach epidemic proportions unless it is adequately addressed.

1

**Jurisdiction and Venue**

2. This Court has jurisdiction over the parties and subject matter pursuant to 5 U.S.C. § 552(a)(4)(B).

3. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

**Parties**

4. PETA is a Virginia non-stock corporation and animal protection charity pursuant to Section 501(c)(3) of the Internal Revenue Code, with its headquarters located at 501 Front Street, Norfolk, Virginia 23510. PETA is dedicated to protecting animals from abuse, neglect, and cruelty. A central tenet of PETA's mission is to expose neglect and abuse to animals used in entertainment. PETA is the requester of the information at issue in this case.

5. Defendant Department of Health and Human Services (HHS) is an agency of the United States. The CDC is a component of HHS. The CDC has possession, custody, and control over the records that PETA seeks.

**Statement of Facts**

Background

6. Elephants carry the human strain of TB, and TB is highly transmissible between elephants and humans. In its 2011 report, "Elephant to Human Transmission of Tuberculosis, 2009," the CDC warned that there is a "high prevalence of *M. tuberculosis* infection among elephants living in North America," and further warned that because of "gaps in scientific knowledge" "and the insensitivity of diagnostic tests, a substantial need exists for focusing attention on infection control practices and occupational health programs specifically designed to reduce zoonotic *M. tuberculosis* transmission in the captive elephant industry."

7. Between 1994 and 2010, 50 U.S. elephants tested positive for TB—approximately 12

percent of the country's current elephant population. Most of these cases involved Asian elephants—the species most commonly used in circuses and other traveling exhibits. Experts estimate that 18 percent of Asian elephants in the U.S. test positive for TB. The actual percentage may be much larger, as it is common for TB in elephants to be identified after death on necropsy even when it was not detected through testing while they were alive.

8. Numerous elephants with animal exhibitors have been treated for TB and/or quarantined because of TB exposure. Exhibitors haul these elephants around the country and put them in close public contact despite knowing that TB is highly transmissible to humans even without direct contact with an infected elephant. Indeed, tuberculosis carried by an elephant was linked to an outbreak in Tennessee among nine humans, some of whom had had no direct contact with the elephant.

9. The circus giant Ringling Bros. and Barnum & Bailey Circus, which owns approximately 39 elephants, more than any other exhibitor in the United States, has repeatedly exposed the public to TB-positive elephants. While an elephant named Banko was performing with Ringling on April 17, 2014, in Fairfax, Virginia, Ringling collected a sample from her and tested it for tuberculosis. More than two months later, on June 25, 2014, following performances in front of audiences across the United States, the test results came back—Banko had active TB and had been exposing the other elephants, circus staff, arena workers, and countless members of the public to the disease. Despite the transmission risk, none of the elephants performing alongside Banko was removed for quarantine. Banko herself had similarly been exposed to TB the previous year, when another elephant with Ringling named Asia tested positive for TB while on the road.

10. Banko and Asia are only the latest elephants used by Ringling to test positive for TB.

Records reveal that the circus' so-called Center for Elephant Conservation in Polk City, Fla., has been under quarantine imposed by the state of Florida for years. As of June 2014, at least nine elephants at the CEC were under quarantine orders. Documents that PETA obtained in March 2015 reveal that in 2010, at least sixteen elephants with Ringling tested positive for tuberculosis. Since then, over a third of those elephants have died, including Jewell, who was transferred to the Little Rock Zoo in violation of Florida's animal quarantine laws.

11. PETA seeks the requested documents from the CDC, among other reasons, to obtain any and all information that the CDC has on elephants and TB, which includes, at a minimum, records related to the agency's 2011 report on the issue. PETA also seeks these documents to learn how the CDC is addressing TB in elephants and the risks transmission of the disease from elephants poses to humans, especially given the agency's urging in its 2011 reports that "a substantial need exists for focusing attention on infection control practices and occupational health programs specifically designed to reduce zoonotic *M. tuberculosis* transmission in the captive elephant industry."

12. PETA has been actively involved in urging the implementation of updated guidelines for the control of TB in elephants, in gathering information about the prevalence of TB in elephants exhibited in the United States, and in educating its members and the general public about this issue.

13. The records that PETA seeks would contribute to the public's understanding of the CDC's regulation of the spread of zoonotic infectious diseases.

Plaintiff's FOIA Request (CDC FOIA No. 14-00755)

14. On June 4, 2014, PETA submitted a Freedom of Information Act request to the CDC for all records related to elephants and tuberculosis from January 1, 2011, until the

date the request was processed. PETA sought a fee waiver based on 5 U.S.C. § 552 (a)(4)(A)(iii) and 45 C.F.R. § 5.45. The CDC did not acknowledge PETA's request. Pursuant to 45 C.F.R. § 5.35(b)(1), the CDC was required to decide whether to release the records within 10 working days of the request, or by June 18, 2014. Pursuant to 5 USC § 552(a)(6)(A)(i), the CDC was required to respond to PETA's June 4, 2014 FOIA request within 20 working days, or by July 1, 2014.

15. Having yet to receive an acknowledgement more than four months after submitting its request, on October 13, 2014, PETA sent an e-mail to the CDC inquiring about the status of the request. PETA did not receive a response.

16. On October 17, 2014, PETA sent an email to the CDC requesting a response to the October 13 e-mail.

17. Another two months later, on December 17, 2014, PETA finally heard from the CDC. Even though PETA had requested a fee waiver, the CDC provided PETA with a $1,600.50 cost estimate to fulfill the request, as well as an invoice breaking down the cost, and asked that PETA commit to paying the cost within 15 days to prevent the request from being considered withdrawn. The CDC did not acknowledge PETA's fee waiver request.

18. On or about December 17, 2014, PETA's counsel called the CDC office to discuss the fee estimate. A representative of the CDC office returned the call on December 18 and informed PETA's counsel that a mistake was made on the letter that was sent to PETA, that the records were still being searched, and that she had not noticed the fee waiver request in PETA's correspondence. The representative indicated that a new letter would be provided to PETA and that PETA could disregard the request that it respond to the cost estimate within 15 days. PETA's counsel followed up with an e-mail to the CDC summarizing the conversation.

19. On December 18, 2014—six and a half months after PETA had submitted its FOIA request—the CDC sent PETA an acknowledgement letter that assigned request number 14-00755 but did not indicate when the request would be fulfilled.

20. On December 19, 2014, the CDC sent PETA an e-mail confirming that PETA did not need to respond within 15 days.

21. Another four months later, on April 21, 2015, PETA's counsel e-mailed the CDC inquiring as to the estimated release date of the responsive documents.

22. On April 21, 2015, a PETA representative spoke to the CDC and was informed that a status request has been sent in.

23. On April 25, 2015, the CDC sent a letter to PETA stating that the agency was unable to provide PETA with a timeline for the completion of the request.

24. On July 9, 2015, more than a year after PETA had submitted its request, a PETA representative sent an e-mail to the CDC inquiring as to the status of the request. On July 10, the CDC responded stating that it was unable to provide a timeframe for the completion of the request.

25. As of the filing of this Complaint, PETA has not received a final determination and responsive documents from the CDC with regard to CDC FOIA Request No. 14-00755.

26. Under 5 USC § 552(a)(6)(C)(i), PETA is deemed to have exhausted its administrative remedies because the agency has failed to comply with the statutory time limit.

**Count I: Violation of FOIA – Unreasonable Withholding of Records**

27. PETA realleges and incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

28. The CDC has violated FOIA by unreasonably withholding records responsive to PETA's

CDC FOIA Request No. 14-00755.

29. PETA has been and will continue to be irreparably harmed until the CDC is ordered to comply with PETA's CDC FOIA Request No. 14-00755.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that Defendant's failure to comply with FOIA is unlawful;

(2) Enjoin Defendant from continuing to withhold the public records responsive to PETA's CDC FOIA Request No. 14-00755 request and otherwise order the Defendant to produce records responsive to PETA's request without further delay;

(3) Maintain jurisdiction over this action until Defendant complies with FOIA and all orders of this Court;

(4) Award Plaintiff its attorneys' fees and other litigation costs reasonably incurred in this action pursuant to pursuant to 5 USC § 552(a)(4)(E)(i); and

(5) Grant Plaintiff such other and further relief as the Court may deem just and proper.

Date: November 5, 2015

Respectfully submitted,

/s/ Matthew Strugar_____
Matthew Strugar (D.C. Bar No. 1010198)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
Tel: 323-210-2263
Fax: 213-484-1648
Matthew-S@petaf.org

*Attorney for Plaintiff*